UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| JEANNIE RENEA PITTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:23-CV-18-DCP |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 8]. Now before the Court is Plaintiff's Brief in Support of a Social Security Appeal [Doc. 13]. Jeannie Renea Pittman ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of Defendant Commissioner of Social Security ("Commissioner"). For the reasons set forth below, the Court will affirm the final decision of the Commissioner.

**I.  PROCEDURAL HISTORY**

On March 21, 2017,[1] Plaintiff filed for Disability Insurance Benefits ("DIB") [Tr. 164–65] pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*.[2] Plaintiff claimed a

---

[1] Plaintiff alleges in her brief that she protectively filed her application on March 30, 2017 [Doc. 13 p. 1]. However, the Application Summary for Disability Insurance Benefits [Tr. 164] states she applied on March 21, 2017, and the Disability Determination Transmittals [*id.* at 52, 68] and the initial decision by the ALJ state she applied on March 20, 2017 [*id.* at 15 (citing Tr. 52, 68, 164–65)]. While there is some discrepancy, the record supports a finding that Plaintiff filed before March 27, 2017, such that, as discussed more fully in Section IV herein, the prior rule for evaluating medical opinions apply. Further, in remanding the case, the Appeals Council instructed the ALJ to apply the prior rules [*Id.* at 1591].

period of disability that began on March 7, 2017 [Tr. 164]. After her claims were denied initially [*id.* at 52–54] and upon reconsideration [*id.* at 68–69], Plaintiff requested a hearing before an ALJ [*id.* at 98–99]. A hearing was held on September 12, 2018 before an ALJ [*Id.* at 34–50]. On January 10, 2019, the ALJ found Plaintiff not disabled [*Id.* at 12–33]. Plaintiff asked the Appeals Council to review the ALJ's decision [*Id.* at 161–63]. The Appeals Council denied Plaintiff's request for review [*id.* at 1–6], making the ALJ's decision the final decision of the Commissioner.

Plaintiff filed a brief on March 24, 2021, in this Court seeking judicial review of the ALJ's decision [*Id.* at 1532–45]. The case was voluntarily remanded on May 4, 2021, for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g) [*Id.* at 1572–73]. The Appeals Council vacated the ALJ's 2019 decision and remanded the case for further consideration pursuant to the District Judge's Order [*Id.* at 1587–92].[3] The Appeals Council found that the previous decision "[did] not contain an evaluation of the opinions provided by treating sources Troy Gilson, M.D. and David Webb, LPC, MHSP (20 CFR 404.1527)" [*Id.* at 1589]. Further, the Appeals Council concluded that the ALJ "[did] not acknowledge or evaluate this opinion as required under 20 CFR 404.1527, and the opinion [was] not consistent with the residual functional capacity finding the claimant can perform 'simple, routine, repetitive tasks and infrequent change[s] in a routine and work setting'" and remanded the case for consideration under 20 C.F.R. § 404.1527 [*Id.* at 1589–90]. Pursuant to the Appeals Council's order, the ALJ

---

[2] The Commissioner states that Plaintiff filed for DIB under Title II as well as supplemental security income pursuant to Title XVI [Doc. 17 p. 1 (citing Tr. 52, 68, 164–65)]. However, as indicated by the portions of the transcript cited by the Commissioner, it appears Plaintiff only applied for DIB under Title II [Tr. 52, 68, 164].

[3] Plaintiff filed a subsequent claim for DIB on March 24, 2020 [Tr. 1816]. On remand, the Appeals Council found this subsequent claim to be duplicative, and instructed the ALJ to consolidate the cases and apply the prior rules [*Id.* at 1591].

2

held a hearing on May 3, 2022, but was unable to access Plaintiff's electronic file [*Id.* at 1496–1503]. A third hearing was held on September 16, 2022 [*Id.* at 1479–95]. On December 20, 2022, the ALJ found Plaintiff not disabled [*Id.* at 1445–78]. Plaintiff did not seek review from the Appeals Council, but instead exhausted her administrative remedies by waiting sixty-one days for the ALJ's decision to become final. Plaintiff then filed a Complaint with this Court on February 20, 2023, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed opposing briefs, and this matter is ripe for adjudication [Docs. 13, 17, 18].

## II.     DISABILITY ELIGIBILITY AND ALJ FINDINGS

### A.     Disability Eligibility

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

B. ALJ Findings

Here, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since March 7, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

4

3. The claimant has the following severe impairments: depression, bipolar disorder, anxiety, borderline personality disorder, posttraumatic stress disorder, eating disorder, osteoarthritis, migraines, obsessive compulsive disorder, and fibromyalgia (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: all postural occasional; no ladders, ropes, scaffolds, or hazards; can understand, remember, and carryout simple instructions; occasional changes in routine and work setting; occasional contact with public, coworkers and supervisors; cannot perform tasks that require production rates such as hourly quotas or assembly work; and infrequent changes in routine and work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 13, 1969 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 7, 2017, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 1451–67].

## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a

6

reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    ANALYSIS

Plaintiff raises one issue on appeal: whether the ALJ failed to evaluate and adequately explain her consideration of Troy Gilson's, M.D. ("Dr. Gilson") and David Webb's, LPC, MHSP ("LPC Webb") opinions for supportability and consistency as required by 20 C.F.R. §§ 404.1520c and 416.920c [Doc. 13]. Plaintiff maintains that the ALJ's failure to adequately consider these two opinions led to the omission of pertinent restrictions, resulting in an

7

inaccurate RFC and hypothetical posed to the vocational expert ("VE") [*Id.* at 20–22]. Plaintiff asks the Court to "remand for an outright award and calculation of benefits" [*Id.* at 21]. The Commissioner responds that the ALJ's RFC was supported by substantial evidence and that the ALJ properly evaluated Dr. Gilson's and LPC Webb's opinions under 20 C.F.R. §§ 404.1527 and 416.927 [Doc. 17].[4] For the reasons explained below, the Court finds that the ALJ properly evaluated Dr. Gilson's and LPC Webb's opinions and that the hypothetical posed to the VE and the ALJ's RFC were supported by substantial evidence.

As an initial matter, the Court finds that Plaintiff filed her application for DIB before March 27, 2017 [Tr. 164–65], and therefore her case is considered under 20 C.F.R. § 404.1527. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply.").[5] The Court has considered Plaintiff's arguments to the extent they apply to 20 C.F.R. § 404.1527.

### A. Persuasiveness of Dr. Gilson's and LPC Webb's Opinions

Plaintiff argues that "the ALJ did not . . . address the factor of supportability" [Doc. 13 p. 15 (citing Tr. 1451–65)] and did not provide an "adequate discussion of the factor of consistency" with regard to Dr. Gilson's and LPC Webb's opinions [*id.* at 17]. She maintains that Dr. Gilson's and LPC Webb's opinions would have been found persuasive because they have treated her two to four times a month since 2014 and "provided extensive medical evidence,

---

[4] Plaintiff argues in her Reply [Doc. 18 pp. 1–2] that the Commissioner's argument includes "additional *post hoc* rationalization – gleaned from parts of the record which the ALJ did not address" [*id.* at 1 (citing Doc. 17 pp. 6–9)]. The Court finds that the Commissioner's brief did not cite to any portion of the transcript that was not also cited by the ALJ in her decision.

[5] Generally, an application for benefits is considered filed on the day the Administration receives the application in the Social Security office. *See* 20 C.F.R § 404.614.

clinical observations, and supporting explanations in the Mental Impairment Questionnaire" [*Id.* (citing Tr. 3791–97)]. The Commissioner responds that the ALJ considered the record as a whole and gave "good reasons" for giving less than controlling weight to Plaintiff's treating physician, Dr. Gilson [Doc. 17 pp. 3, 6]. The Court finds that the ALJ properly considered Dr. Gilson's and LPC Webb's opinions.

In evaluating medical opinions, the regulations require that, unless the opinion of a treating source is entitled to controlling weight, an ALJ must evaluate all medical opinions according to the 20 C.F.R. § 404.1527(c) factors, regardless of their source. *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999). These factors include "how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment." *Williamson v. Comm'r of Soc. Sec.*, No. 1:14–cv–731, 2016 WL 255033, at *8 (S.D. Ohio Jan. 20, 2016); *see also* 20 C.F.R. § 404.1527(c). The factor of supportability refers to evidence that supports the medical opinion, "particularly medical signs and laboratory findings." 20 C.F.R. § 404.1527. Consistency refers to evidence otherwise on the record that corroborates the medical opinion. *Id.* "ALJs should 'explain the weight given' such opinions, 'or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case.'" *Woodcock v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 912, 921 (S.D. Ohio 2016) (citing to *Williamson*, 2016 WL 255033, at *8). However, it is not necessary that an ALJ give "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (citation omitted).

Dr. Gilson and LPC Webb have been treating Plaintiff two to four times per month since July 29, 2014 [Tr. 3791]. Dr. Gilson's and LPC Webb's treatment notes are included on the record as well as a letter they wrote summarizing Plaintiff's diagnoses in August 2018 [*id.* at 1426] and a Mental Impairment Questionnaire they completed in 2022 [*id.* at 3791–97]. The ALJ summarized their findings as follows:

> In the statement dated August of 2018, Dr. Gilson and Mr. Webb state in part that due to the chronic nature of the claimant's mental health symptoms and the high likelihood of decompensation in even mildly stressful situations, they support her efforts to gain disability or supplemental income and insurance (Exhibit 22F). In the statement dated April of 2022, Dr. Gilson and Mr. Webb state that the claimant would miss about 4 days of work per month due to her impairments or treatment, anxiety related disorder and complete inability to function independently outside of her home, and either marked or extreme limitation in all mental health related functional areas (Exhibit 57F).

[*Id.* at 1463]. The ALJ afforded these opinions partial weight "because they are too restrictive or limiting when compared to the overall medical evidence of record in this case" [*Id.*].

The Court finds that the ALJ sufficiently explained why she afforded Dr. Gilson's and LPC Webb's opinions partial weight and how she considered the factors as outlined in 20 C.F.R. § 404.1527. The ALJ noted that there are mental status exams throughout the record that note Plaintiff's more severe mental health symptoms but found that these were offset by the exams, including those conducted by Dr. Gilson and LPC Webb, that evidenced normal mood and affect, among other mild mental symptoms [Tr. 1463 (citing Exhs. 5F, 15F, 19F, 34F 42F, 50F, 57F, 58F, 62F)].[6] The ALJ cites to other reports on the record to support her finding, which goes

---

[6] Dr. Gilson's and LPC Webb's treatment notes include a series of "check-box" forms with two choices: "ABNL" or "WNL" with an instruction to "explain in Comments below" if ABNL is selected [*See e.g.,* Tr. 3800]. In context of these forms, the Court construes "ABNL" to mean "abnormal" given the explanations that accompany those checked boxes are instances in which Plaintiff reported negative symptoms such as feeling numb [*id.* at 3848] and having overgeneralized thoughts [*id.* at 3856]. Similarly, the Court understands "WNL" to mean "within normal limits."

10

to the consistency factor [*id.* (citing Exhs. 19F, 50F, 62F)], as well as Dr. Gilson's and LPC Webb's reports, which goes to the supportability factor [*id.* (citing Exhs. 5F, 15F, 34F, 57F, 58F]. The ALJ continued to support her decision, by explaining that while some reports prepared by Dr. Gilson and LPC Webb showed Plaintiff's symptoms worsening, other opinions cited by the ALJ, including Dr. Gilson's and LPC Webb's, indicated Plaintiff's symptoms had improved over time with continued treatment and medication management [*Id.* (citing Exhs. 5F, 15F, 19F, 33F, 34F, 42F, 57F, 58F showing, among other things, Plaintiff having thought processes, mood, and affect within normal limits)]. Finally, the ALJ noted Plaintiff's abilities such as taking vacations, caring for her children, working, and performing household chores which are consistent with a less restrictive RFC [*Id.* at 1464 (citing Exhs. 42F, 54F, 47F, 57F)]. These reasons sufficiently support the partial weight that the ALJ gave Dr. Gilson's and LPC Webb's opinion. *See* SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996) ("Good reasons [must be] . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). The regulations do not require more.

Plaintiff argues that the ALJ "cherry-picked innocuous findings" from Dr. Gilson's and LPC Webb's opinions which "do not disprove the extensive evidence of serious psychological conditions which are well-documented in this record" [Doc. 13 p. 18; Doc. 18 p. 2]. However, as the Commissioner points out, the same process Plaintiff describes as cherry picking "can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). Further, "The problem with [Plaintiff's] cherry picking argument [] is that it cuts both ways. She too cherry picks data." *Id.* at 285. Plaintiff notes the ALJ mentioned that Dr. Gilson and LPC Webb found Plaintiff had "normal thought processes, normal

11

judgment/insight, normal speech, a normal fund of knowledge, and normal mood and affect" [Doc. 13 p. 18]. But the ALJ discussed other parts of Dr. Gilson's and LPC Webb's findings as well, such as:

> Records from 2016 and 2017 show that the claimant presented with complaints of depression and anxiety, low energy, and irritability.
> . . .
> Records show that the claimant reported ongoing anxiety, some occasional passive suicidal thoughts, negative thoughts, hypersomnolence, depressed mood, and anhedonia.
> . . .
> The claimant reported some increased anxiety on occasion, anger, and excessive worrying. These records also reflect that posttraumatic stress disorder and borderline personality disorder were added as diagnoses.

[Tr. 1460–61 (internal citations omitted)]. All of these statements were followed by the ALJ also noting that Plaintiff was found to have "normal thought processes, normal judgment/insight, normal speech, a normal fund of knowledge, and normal mood and affect" [*Id.*]. The ALJ found that despite Dr. Gilson's and LPC Webb's reports mentioning more severe symptoms, the record as a whole supports a less restrictive RFC, including other reports from Dr. Gilson and LPC Webb. The Court finds that the ALJ was not "cherry picking" pieces of evidence but rather was "neutrally [] weighing the evidence." *White*, 572 F.3d at 284.

Plaintiff also argues that the ALJ was impermissibly "playing doctor" by determining that Plaintiff's condition was stable or improved with medication [Doc. 13 p. 19; Doc. 18 p. 2]. The ALJ's decision stated that "the claimant is also routinely noted to be improved or stable with medication management and therapy" [Tr. 1463 (citations omitted)] and that "[r]ecords from 2021 also show that medications (Wellbutrin and Prozac) were working well, she was not as down, and she was not as obsessive or depressed as often" [*id.* at 1462 (citing Exh. 57F pp. 18, 33, 40, 48, 64)]. Reviewing the pages to which the ALJ cites in support, shows that the ALJ's statements were taken directly from Dr. Gilson's and LPC Webb's findings. Dr. Gilson's notes

repeatedly indicate that Plaintiff's "progress toward goals" is "stable" [*see e.g.*, *id.* at 605, 611, 617, 3849][7] or "improved" [*see e.g.*, *id.* at 649], and the same is reflected in LPC Webb's notes [*see e.g.*, *id.* at 3946]. Similarly, Dr. Gilson's notes from July 6, 2021, state that Plaintiff reported that since starting on Wellbutrin "there[']s a difference" and that she is not "as down and when [she] do[es] get sad it[']s lasting a day" [*Id.* at 3808]. Notes from September 17 and October 14, 2021, reflect that Plaintiff's Prozac dosage was increased and that she reported it had helped [*Id.* at 3823, 3830].

Therefore, the Court finds that the ALJ properly evaluated Dr. Gilson's and LPC Webb's opinions under 20 C.F.R. § 404.1527.

B.  **RFC Assessment**

Plaintiff argues that the RFC and hypothetical posed to the VE are inaccurate because the ALJ improperly considered Dr. Gilson's and LPC Webb's opinions [Doc. 13 pp. 20–21; Doc. 18 p. 3]. The Commissioner responds that the ALJ's RFC was supported by substantial evidence [Doc. 17]. The Court also finds that the ALJ's RFC and hypothetical posed to the VE were supported by substantial evidence.

The Disability Determination Section ("DDS") medical consultants reviewed Plaintiff's record and determined that, overall, Plaintiff has moderate mental limitations but that she is able to "maintain attention and concentration adequately with above tasks only with customary breaks" and "interact appropriately with coworkers, supervisors and the general public. Contact with the general public should be superficial only" [Tr. 1584]. The ALJ afforded partial weight to the opinions of the DDS medical consultants because she found "their findings were made

---

[7]    It appears from the record that Plaintiff established various goals centered on her mental health concerns with Dr. Gilson and LPC Webb throughout her care. For example, treatment notes from July 2021 list goals such as "Achieve a sustainable mood, behavioral and cognitive stability" and "increase interactions outside the home" [Tr. 3936].

13

without benefit of the claimant's testimony and presentation at the hearing and before additional evidence from the claimant's treating sources had been received" [*Id.* at 1462]. The mental limitations in the ALJ's RFC and hypothetical posed to the VE incorporate and expand upon the limitations opined by the medical consultants [*See id.* at 1455, 1491]. The ALJ incorporated the limitation to have only occasional interaction with the public but also added that Plaintiff should only have occasional contact with coworkers and supervisors [*Id.* at 1455]. Further, the ALJ added the following limitations: "occasional changes in routine and work setting . . . cannot perform tasks that require production rates such as hourly quotas or assembly work; and infrequent changes in routine and work setting" [*Id.*]. While these limitations differ from those in Dr. Gilson's and LPC Webb's opinions, the ALJ adequately explained why she did not find their opinions persuasive, otherwise adopted their limitations,[8] and her RFC was supported by substantial evidence. *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

---

[8] The Court also notes that Dr. Gilson and LPC Webb did not opine any specific limitations, but rather completed a check-box questionnaire regarding Plaintiff's mental capacities [Tr. 3791–97] and otherwise submitted their records along with a letter noting her diagnoses [*id.* at 1426]. *See Kreilach v. Comm'r of Soc. Sec.*, 621 F. Supp. 3d 836, 845–46 (N.D. Ohio Aug. 15, 2022) (finding that the ALJ was not required to explain his omission of an opined limitation at issue because it was not a concrete, specific limitation and there was not substantial evidence in the record to support the opined limitation); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

## V. CONCLUSION

For the reasons set forth above, the Court will **AFFIRM** the final decision of the Commissioner.

**IT IS SO ORDERED**.

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge